UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES WARPOOL,

        Plaintiff,        Case No. 18-13836
                              HON. VICTORIA A. ROBERTS

v.

G.P. STRATEGIES,

        Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 21]

**I.    INTRODUCTION**

James Warpool ("Warpool") filed this action against GP Strategies ("GP"). He says that GP terminated him because of his age – in violation of the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Michigan Elliott–Larsen Civil Rights Act ("ELCRA"), Compiled Laws §§ 37.2101 et seq. – and disability status, in violation of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), the Americans with Disabilities Act ("ADA"), and the Family and Medical Leave Act ("FMLA").

GP filed this motion for summary judgment under Federal Rules of Civil Procedure 56. The Court finds there are no genuine issues of material fact

1

regarding the legality of Warpool's termination. The Court **GRANTS** GP's Motion.

## II.   FACTUAL BACKGROUND

In 1993, GP hired Warpool. He received several promotions before his termination in 2001 due to an economic downturn.

In 2006, GP rehired Warpool as a director to expand its presence in Asia. Warpool never lived there, but he travelled frequently to Asia for business. From 2006- 2013, Warpool reported directly to Dan Miller ("Miller"). Warpool voluntarily resigned from GP in February 2013; he accepted an assignment from a GP competitor.

In 2013, GP secured a contract with HSBC, a British multi-national banking and financial services holding company. Miller recruited Warpool back to serve as Director for the HSBC account. Miller told Warpool that GP's agreement with HSBC involved a significant amount of work over five years. But, he never promised Warpool guaranteed employment; the offer letter stated Warpool was an "at will employee." In October 2013, Warpool returned as GP's "Director of Performance Consulting and Learning Program Design."

Warpool took an FMLA leave of absence in October 2016 after he underwent an aortic dissection procedure. He was on leave until February 2017. Warpool stated that GP never interfered with his FMLA rights.

While Warpool was on FMLA approved leave, General Motors Corporation ("GM"), a GP client and global partner, asked GP to create a manager position at the company to service GM's account. Martha Manting, a Senior Vice President at GP, led the manager search with Chris Bower ("Bower"), GM's Director of the Center for Learning, Sale, and Services Marketing. GM sought a manager with immersive global experience to begin work in early 2017.

Warpool testified that he felt pressured to return to work in January or February 2017 for the GM position; he returned February 2017 when he determined he was physically able to do so.

GP and GM awarded the manager position to Keith Keating ("Keating"), who relocated from GP's Hong Kong office to Detroit. They believed he held the immersive global experience background GM sought. Keating worked for GP in both Hong Kong and London. Moreover, Keating previously worked with Bower on a learned technology project in 2013.

When Warpool returned from FMLA leave in February 2017, his work on the HSBC project diminished significantly because GP hired employees

in London to complete the necessary work. In May 2017, GP approved Warpool's second FMLA leave of absence; Warpool underwent two additional surgeries. Again, Warpool testified GP did not interfere with his FMLA rights during his leave of absence.

In July 2017, Warpool returned to GP and began working on the internal, Oracle software-implementation project ("Oracle Project"). The Project required substantial customization and migration of almost nine years of data. The Oracle Project experienced three delays, which caused a slowdown in Warpool's workload. During the delays, Warpool sought work on the HSBC account. However, beginning in 2017, Miller never assigned Warpool work on the HSBC account because HSBC asked Miller to remove Warpool from its account. Miller never informed Warpool of HSBC's request.

In December 2017, GP began restructuring through a reduction in force ("RIF") of employees. GP asked department heads to "examine the costs … and identify places that [GP] could initiate cost cutting measures." GP inquired into the utilization rate of employees. An employee's utilization rate depended on whether the employee worked on generated revenue projects. Warpool had been working on the internal, non-revenue generating Oracle Project. As such, GP identified Warpool as a potential candidate for termination based upon an assessment of the tasks that remained and the

skill set required to perform the tasks. GP's Human Resources office conducted an adverse impact analysis with respect to the age, race, gender, and position of the employees proposed for termination.

GP terminated at least 66 employees in 2017 and more than 34 employees in 2018. These terminations included 9 director level positions similar to Warpool's. The layoffs continued through the summer of 2018. GP says that it attempted to place Warpool on revenue-generating projects; however, GP could not come to an agreement with potential clients. Warpool says that GP never attempted to find alternative work. In April 2018, GP terminated Warpool.

### III. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden to inform the Court of the basis for its motion; it must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id.* at 324. Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat

summary judgment, as is the "mere existence of a scintilla of evidence in support of the [non-movant's] position"; the evidence must be such that a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court need only consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

### IV. ANALYSIS

At the time of his termination, Warpool was 62 years old. Warpool says GP terminated him because of his age and disability status. He did not assert an independent claim based on the denial of the position to manage the GM account. Warpool also says GP's explanation for his termination was pretextual. GP argues Warpool has no facts to support a claim of differential

treatment based on age or disability status and that GP had legitimate, non-pretextual reasons to terminate him.

### A. ADEA/ELCRA Discrimination

Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "The purpose of the ADEA... is to protect older workers from being 'deprived of employment on the basis of inaccurate and stigmatizing stereotypes, and to ensure that employers evaluate their employees on the basis on their merits, and not their age." *Allen v. Diebold*, 33 F.3d 674, 676-77 (6th Cir. 1994) (internal citations omitted).

The burden of persuasion is on Warpool to show that "age was the 'but-for' cause of [GP's] adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). Warpool "may establish a violation of the ADEA by either direct or circumstantial evidence." *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009)). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's action." *Gieger*, 579 F.3d at 620

(quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)).

Warpool does not present direct evidence of age discrimination. When the plaintiff lacks direct evidence, the claim is analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973); *Blizzard*, 698 F.3d at 283. To establish a prima facie case relying upon indirect evidence of age discrimination, Warpool must establish that: (1) he is a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the position; and, (4) [GP] replaced him with a younger worker. *Briggs v. Potter*, 463 F.3d 507, 514 (6th Cir. 2006).

An employment discrimination case under ELCRA is analyzed under the same framework as an analogous claim under Title VII. *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003); *Cox v. Electronic Data Systems Corp.*, 751 F.Supp. 680, 690 (E.D. Mich.1990); *Nixon v. Celotex Corp.*, 693 F.Supp. 547, 553–54 (W.D. Mich.1988). The Court will evaluate Warpool's ADEA and ELCRA claims together, under the ADEA's framework.

It is undisputed that Warpool satisfied the first two prongs of his prima facie case: (1) he is over the age of 40 and (2) his termination was an adverse employment action. The parties dispute whether Warpool was qualified for an open position at GP and whether GP terminated him pursuant to a RIF.

### 1. Warpool Abandons His Claim That He Was Qualified for an Open Position at GP

Warpool says that GP only challenges the fourth element of the prima facie case. [ECF No. 24, PageID.523]. But, GP also disputes whether Warpool was qualified for any open positions. [ECF No. 21, PageID.345]. Warpool failed to respond to GP's argument.

Fed. R. Civ. P. 56(e) states that the Court may grant summary judgment if "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact...." Rule 56(e) requires nonmoving parties to go beyond pleadings to show a genuine issue of material fact. *Celotex*, 477 U.S. at 324.

Warpool abandoned any claim that he was qualified for an open position at GP by failing to address this issue. *See, e.g., Bradley v. Mary Rutan Hosp. Assoc.*, 322 F.Supp.2d 926, 931 n. 7 (S.D. Ohio 2004); *Kattar v. Three Rivers Area Hosp. Auth.*, 52 F.Supp.2d 789, 798 n. 7 (W.D. Mich.1999); *Jones v. Allercare*, 203 F.R.D. 290, 307 (N.D. Ohio 2001).

### 2. Warpool Fails to Establish A Prima Facie Case

Even if Warpool had presented evidence that he was qualified for an open position, he fails to present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons" in order to satisfy the fourth prong of his prima facie case. *Barnes*, 896 F.2d at 1465.

### a. Did GP Dismiss Warpool Pursuant to a RIF?

"A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company." *Barnes*, 896 F.2d at 1465. "[W]hen a termination arises as part of a [RIF], the fourth element of the McDonnell Douglas test is modified or heightened to require the plaintiff to provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 265 (6th Cir. 2010) (internal citations omitted). "The purpose of the additional evidence requirement is to ensure, in reduction [in] force cases, that the plaintiff has presented evidence to show that there is a chance the reduction in force is not the reason for the termination." *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006).

Warpool says GP did not terminate his employment pursuant to a RIF and his termination occurred after GP completed its RIF terminations in 2017. [ECF No. 24, PageID. 523]. He further notes GP failed to present sufficient evidence of the financial necessity for a RIF, noting the "tremendous growth" of the company. [ECF No. 24. PageID.516].

GP rebuts this assertion. It submits 2018 and 2019 filings with the Securities and Exchange Commission, where GP noted, it "expects the restructuring activities to be substantially completed in the first half of 2018 and that it will incur certain transition costs in 2018 and 2019." [ECF No. 25-2, PageID.720].

GP also submits evidence that it terminated 34 employees in 2018, eight of whom were terminated after Warpool. [ECF No. 25-4, PageID.727]. Warpool does not address these terminations.

There is no genuine issue of material fact: GP terminated Warpool pursuant to a RIF.

> **b. Did Warpool Present Additional Evidence That GP Discharged Him for Impermissible Reasons?**

Warpool points to other circumstantial evidence that he says demonstrates GP targeted him for termination due to his age. Warpool says

he "possesses superior qualifications" because Daniel Korn ("Korn") is less qualified than he based upon their respective ages and experience. GP argues this conclusory and circumstantial evidence fails to meet this higher burden and, therefore, fails to make out a prima facie case. [ECF No. 25, Page.ID419].

Warpool's contention that he was "better qualified" is nothing more than a conclusion, which is insufficient to establish a prima facie case. *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017). ("[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment.").

Further, an employee's evaluation of his own performance or qualifications is irrelevant as a matter of law. *LaGrant v. Gulf & Western Mfg. Co.*, 748 F.2d 1087, 1090–91 (6th Cir.1984) (an employee's "subjective determination that he was better qualified than" others who were retained is insufficient to establish that age played any role in the decision to terminate him); *Beck v. Buckeye Pipeline Servs. Co.*, 501 F.pp'x 447, 451 (6th Cir. 2012) ("use of subjective evaluation criteria does not by itself show discrimination"); *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir.1987)

(employee's "perception of his competence, and the incompetence of those competing against him, is irrelevant").

Warpool's conclusory opinions based on his own view of Korn's competence are insufficient to establish a prima facie case. The Court finds it is significant that his revenue generating projects were all but eliminated. It would be extremely disruptive to terminate employees who were in the midst of ongoing, revenue generating projects, or who had developed long-term relationships with clients, and replace them with others not wanted by the clients. Importantly – like Warpool – GP terminated Korn's employment after he completed his portion of the Oracle Project.

Warpool's burden at this juncture is to present additional direct or statistical evidence to support his prima facie case. *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121 (6th Cir. 1998); *Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 944 (6th Cir. 1987). He fails to present any additional evidence – beyond conclusory statements about his qualifications – that GP terminated him for discriminatory reasons. This is insufficient to establish a prima facie case.

### 3. GP Presents A Legitimate Non-Discriminatory Reason for Warpool's Termination

Even if Warpool presented a prima facie case of discrimination, GP's RIF constitutes a legitimate, non-discriminatory reason for his termination.

To overcome a prima facie case of discrimination, an employer must "articulate a legitimate nondiscriminatory reason" for its action. *See Barnes v. GenCorp Inc.*, 896 F.3d 1457, 1465 (6th Cir. 1990) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).

GP articulated a legitimate non-discriminatory reason for terminating Warpool's employment, i.e., demonstrated need to reduce its budget and streamline its workforce and operations. And, GP demonstrated it terminated director level employees, like Warpool, between 2017 and 2018 due to financial hardships at GP.

### 4. Warpool Fails to Establish GP's Termination Was Pretext For Discriminatory Animus

After an employer articulates legitimate nondiscriminatory reasons for terminating a plaintiff's employment, the burden shifts back to the employee to point to evidence that the stated reasons were merely a pretext for discrimination. Warpool must produce "sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired [him]." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

To establish pretext, Warpool must show "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [his discharge], or (3) that they were insufficient to motivate discharge." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (emphasis in original) (internal quotation marks omitted).

The three-part test need not be applied rigidly. *Blizzard*, 695 F.3d at 285. "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reasons or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4. (6th Cir. 2009). However, it is not enough for a plaintiff to simply disprove the employer's purported nondiscriminatory reasons; plaintiff must present evidence that age was a but for cause his termination. Warpool has the burden to produce "sufficient evidence from which a jury could reasonably reject [GP's] explanation of why it fired [him]." *Id.* at 400.

Warpool challenges the legitimacy of the RIF, GP's decision to retain Korn on the Oracle Project, and Keating's hiring on the GM account. However, as discussed, Warpool fails to show that these reasons were pretext for discrimination. He has not produced any additional direct, circumstantial, or statistical evidence tending to show that GP terminated his employment for impermissible reasons. Therefore, even if Warpool could

establish his prima facie case, GP is still entitled to summary judgment on all ADEA/ELCRA claims.

### B. Warpool Fails to Establish Discrimination under the ADA and PWDCRA

Warpool says an impairment of his cardiovascular system following an aortic dissection makes him disabled under the ADA. GM does not challenge his disability; rather, it says a disability had nothing to do with his termination, which was motivated only by the RIF.

The standards for establishing a prima facie case for disability discrimination under the PWDCRA and ADA are essentially the same. *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012); *Cummings v. Dean Transp., Inc.*, 9 F.Supp.3d 795, 804-05 (E.D. Mich. 2014) ("claims under both statutes are generally analyzed identically."). The Court evaluates Warpool's ADA and PWDCRA claims together, using the ADA framework.

The ADA prohibits employers from discriminating against employees on the basis of their disabilities if they are otherwise qualified to perform their jobs. 42 U.S.C. § 12112. To make out a prima facie case of employment discrimination by indirect evidence under Title I of the ADA, Warpool must show that (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse

employment decision; (4) GP knew or had reason to know of his disability; and (5) GP either replaced his or left the position open while seeking other applicants. *Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011); *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 417 (6th Cir. 2004).

The prima facie framework is modified if an employee is discharged due to a RIF. *Arthur v. Am. Showa, Inc.*, 625 F. App'x 704, 707 (6th Cir. 2015). Warpool must introduce "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465; *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 420–21 (6th Cir. 1999).

Similar to Warpool's ADEA claims, even if Warpool established a prima face case of ADA discrimination, GP says it terminated him pursuant to a RIF. Warpool is required to provide evidence supporting that his termination was pretext. Warpool relies on the same conclusory and speculative remarks.

For the same reasons he fails to state proper ADEA/ELCRA claims, Warpool fails to properly establish an ADA discrimination claim.

"The PWDCRA substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Donald*, 667 F.3d at 764. Warpool does not argue that the court should treat his PWDCRA claim differently from his analogous ADA claim, nor does the record suggest any reason for different treatment. *Id.*

Because Warpool's claim fails under the ADA, it also fails under the PWDCRA.

### C. Warpool Abandons His FMLA Claim

While Warpool says in his complaint that GP both interfered with his FMLA rights and retaliated against him for engaging in protected activity in violation of the FMLA, Warpool appears to abandon his FMLA claim; he failed to respond to GP's argument.

To establish an "interference claim" under the FMLA, a plaintiff must prove that (1) he was an eligible employee, (2) defendant was a covered employer, (3) he was entitled to leave under the FMLA, (4) he gave his employer notice of intent to take leave, and (5) the employer denied FMLA benefits or interfered with FMLA rights. *Harris v. Metro Govt of Nashville & Davidson Cnty, Tenn.*, 594 F.2d 476, 482 (6th Cir. 2010).

Under the retaliation theory (also known as the discrimination theory), the employer's motive is an integral part of the analysis. *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (2006). To state a retaliation claim, Warpool must show that: (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there was a causal connection between his protected activity and defendant's adverse employment actions. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

Warpool admitted in his deposition testimony that GP never interfered with his FMLA rights, and he fails to address GP's denials of interference and retaliation.

Given Warpool's failure to address his FMLA claim – and his deposition testimony – the Court grants summary judgment on this claim.

### V. CONCLUSION

Warpool cannot establish a genuine issue of material fact that age or disability status was the but for cause for his termination. Warpool abandoned his FMLA claim.

The Court **GRANTS** GP's motion for summary judgment in its entirety.

**IT IS ORDERED.**

Date: May 25, 2020                                  s/ Victoria A. Roberts
                                                              Victoria A. Roberts
                                                              United States District Judge